UNITED STATES DISTRICT COURT
EASTERN DISTICT OF MICHIGAN
SOUTHERN DIVISION

SAMANTHA D.[1],

Plaintiff, Civil Action No.: 25-11818

v. David R. Grand[2]
United States Magistrate Judge

COMMISSIONER OF,
SOCIAL SECURITY,

Defendant.
______________________________________/

**OPINION AND ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 10, 12)**

Samantha D. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions and consented to the undersigned as presider pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.

For the reasons set forth below, the Court finds that substantial evidence does not support the Administrative Law Judge's ("ALJ") conclusion that Plaintiff is not disabled

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

[2] The parties have consented to the undersigned exercising jurisdiction over all proceedings in this civil action pursuant to 28 U.S.C. § 636(c). (ECF No. 5).

under the Act. Accordingly, the Court will **DENY** the Commissioner's Motion for Summary Judgment **(ECF No. 12)** and **GRANT** Plaintiff's Motion for Summary Judgment **(ECF No. 10)**.

## I. Background

Plaintiff was 36 years old at the time of her application on March 2, 2023, and at 5'4" tall weighed between 269 and 292 pounds during the relevant period. (PageID.95, 481, 808, 831).[3] She completed college at the University of Phoenix and trained as a registered behavioral technician. (PageID.261). She was a behavioral therapist and care coordinator for individuals with "mental and behavioral health issues" prior to the alleged onset of disability. (PageID.68-73). She now alleges disability resulting from "Major Depression Disorder – Severe, Generalized Anxiety Disorder, Complex PTSD, Adjustment Disorder, Chronic Pelvic Pain, hypertoning of pelvic floor muscles, Fibromyalgia, PCOS, Endometriosis, Chronic SI Joint Dysfunction, [and] Osteoarthritis." (PageID.95).

After Plaintiff's application for DIB was denied at the initial level on May 1, 2023, and on reconsideration on September 14, 2023 (PageID.109, 121-22), she timely requested an administrative hearing, which was held on April 3, 2024, before ALJ Stacy Appleton. (PageID.60). Plaintiff, who was represented by attorney E. Roberta Wade, testified at the hearing, as did vocational expert ("VE") Madeline Liggin. (PageID.60-94). In a written decision dated May 1, 2024, the ALJ found that Plaintiff is not disabled under the Act. (PageID.40-53). On April 15, 2025, the Appeals Council denied review, making the ALJ's

[3] Standalone citations to "PageID.___" are all to the administrative transcript in this case, which can be found at ECF No. 7-1.

decision the final decision of the Commissioner for purposes of this review. (PageID.24). Plaintiff filed for judicial review of the final decision on June 17, 2025. (ECF No. 1).

The Court has thoroughly reviewed the transcript in this matter, including Plaintiff's medical record, disability reports, and testimony as to her conditions and resulting limitations. Instead of summarizing that information here, the Court will make references and provide citations to the transcript as necessary in its discussion of the parties' arguments.

## II. The ALJ's Application of the Disability Framework Analysis

Under the Act, DIB is available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" in relevant part as the:

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§423(d)(1)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively

> presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, No. 11-10593, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. § 404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following the five-step sequential analysis, the ALJ found that Plaintiff was not disabled under the Act. At Step One, the ALJ found that Plaintiff has not engaged in substantial gainful activity since January 19, 2023, her alleged onset date. (PageID.42). At Step Two, the ALJ found that Plaintiff has the following severe impairments: "degenerative disc disease, obesity, osteoarthritis, endometriosis, polycystic ovarian syndrome 'PCOS', fibromyalgia/chronic pain syndrome, anxiety, depression, Post traumatic stress disorder (PTSD), Attention deficit hyperactivity disorder." (PageID.43). At Step Three, the ALJ found that Plaintiff's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment. (PageID.43-47).

The ALJ then assessed Plaintiff's residual functional capacity ("RFC"), concluding,

> [C]laimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except no climbing ladders, ropes or scaffolds and no crawling; occasional climbing ramps and stairs, balance, as that term is defined in the Selected Characteristics of Occupations (SCO), stoop, kneel, crouch; avoid exposure to hazards; can understand remember and carryout detailed but not complex instructions; can occasionally interact with the public, coworkers and supervisors; can deal with occasional changes in a routine work setting, would be off task 5 percent of the workday.

(PageID.47).

At Step Four, the ALJ determined that, at all relevant times, Plaintiff has been unable to perform her past relevant work. (PageID.51). At Step Five, the ALJ concluded, based in part on the VE's testimony, that Plaintiff can perform a significant number of jobs that exist in the national economy. (PageID.52). As a result, the ALJ concluded that Plaintiff is not disabled under the Act. (PageID.53).

The Court has thoroughly reviewed the transcript in this matter, including Plaintiff's medical record, function and disability reports, and testimony as to her conditions and resulting limitations. Instead of summarizing that information here, the Court will make references and provide citations to the transcript as necessary in its discussion of the parties' arguments.

## III. Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v.*

*Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted). The phrase "substantial evidence" is a "term of art …." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Id.* (internal citations omitted). "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence … is 'more than a mere scintilla.'" *Id.* (internal citations omitted). Specifically, "[i]t means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (internal citations omitted).

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *See Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007); *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if

substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted).

## IV. Analysis

In her summary judgment motion, Plaintiff principally argues that the "ALJ erred in failing to take into account the level of absenteeism for treatment and symptom flares," pointing to the dozens of doctor's appointments she attended between January 2023 and March 2024.[4] (ECF No. 10, PageID.3089-90). For the following reasons, the Court agrees.

According to Social Security Ruling 96-8p,

> an ALJ assesses a claimant's residual functional capacity ("RFC"), or the claimant's ability to perform "sustained work-related physical and mental activities in a work setting on a regular and continuing basis," meaning "8 hours a day, for 5 days a week, or an equivalent work schedule." In making this determination, the Commissioner must take into consideration "[t]he effects of treatment, including limitations or restrictions imposed by the mechanics of treatment (e.g., frequency of treatment, duration, disruption to routine, side effects of medication)." Absenteeism due to the frequency of treatment is a relevant factor so long as the treatment is medically necessary and concerns the conditions on which the disability claim is founded.

*Sheldon v. Comm'r of Soc. Sec.*, No. 18-CV-12564, 2019 WL 3933743, at *4 (E.D. Mich. July 30, 2019), *report and recommendation adopted*, No. 18-12564, 2019 WL 3892561 (E.D. Mich. Aug. 15, 2019) (citing *Griffin v. Comm'r of Soc. Sec.*, No. 2:15-cv-13715, 2017 WL 991006, at *2 (E.D. Mich. Mar. 15, 2017)). Because Plaintiff presents significant

[4] Plaintiff also argues that the ALJ erred in evaluating her subjective complaints (including, in particular, in the context of a claimant who suffers from fibromyalgia) and the opinions of the state agency psychological consultants, and that, as a result, the ALJ's RFC finding is not supported by substantial evidence. (ECF No. 10, PageID.3092-96). Because the Court is remanding as to the absenteeism issue, it need not address these other arguments in detail. On remand, however, the ALJ should give full and fair consideration to these issues.

evidence that the "treatment is medically necessary and concerns the conditions on which the disability claim is founded," the case should be remanded according to this opinion.

While the Commissioner correctly points out that the mere "number of medical visits in and of itself" does not render a claimant disabled, here, the Plaintiff has shown that the appointments were "medically necessary" and relate to the "conditions on which the disability claim is founded." (ECF No. 12, PageID.3105) (citing *McWhorter v. Berryhill*, No. 2:17-CV-12062, 2018 WL 4417746, at *5 (E.D. Mich. July 23, 2018), adopted 2018 WL 4390726 (E.D. Mich. Sept. 14, 2018); *Beck v. Comm'r of Soc. Sec.*, No. 4:19-cv-2320, 2020 WL 5417536, at *4 (N.D. Ohio Sept. 10, 2020)).

First, Plaintiff attended numerous doctor's appointments for treatment of fibromyalgia and other causes of chronic pain, such as endometriosis and polycystic ovarian syndrome ("PCOS"), all of which were bases for her disability claim that the ALJ found were severe impairments. (PageID.43, 95). Plaintiff visited the Cleveland Clinic Center for Comprehensive Pain Recovery (the "Clinic") numerous times for chronic pelvic pain. By January 2023, Plaintiff had already tried "physical therapy, TENS, acupuncture, massage, chiropractic manipulation" to address her chronic pain. (PageID.845). On January 6, 2023, Plaintiff was referred to the Clinic for a consultation regarding ketamine infusions. (PageID.846). On January 13, 2023, she met with Dr. Jessica Strasburg, MD ("Dr. Strasburg") at the Clinic "for follow up on chronic pelvic pain." (PageID.840). She was diagnosed with "[h]igh-tone pelvic floor dysfunction" and "[d]ysmenorrhea" for which the doctor decreased her dose of progestin and ordered vaginal Botox. (PageID.843). On January 26, 2023, Plaintiff again saw Dr. Strasburg for a "chronic pelvic

pain follow up visit." (PageID.823). At this visit, Dr. Strasburg recorded the "Encounter Diagnosis" of "muscle spasm," "endometriosis," and "Nausea" for which Dr. Strasburg "[d]id vaginal and abdominal trigger point injections" and instructed Plaintiff to "[f]ollow up in march 2023 for vag[inal] botox." (PageID.823-24).

On February 14, 2023, she returned to the Clinic to see Dr. Strasburg for "chronic pelvic pain follow up visit." (PageID.818). During this visit, Dr. Strasburg again did "vaginal and abdominal trigger point injections" and again ordered her to "[f]ollow up in march 2023 for vag[inal] botox." (PageID.819). On February 23, 2023, she attended a virtual "shared visit" in which she was instructed about the nature of ketamine…

On March 27, 28, and 29, 2023, Plaintiff received ketamine infusions. (PageID.846, 1490-92). Also on March 30, 2023, she again met with Dr. Strasburg, who gave her vaginal trigger point injections, placed an order for Botox injections, and discussed other therapy options. (PageID.1486).

Plaintiff also had multiple doctor's visits to address her other sources of chronic pain. On April 24, 2023, Plaintiff saw Dr. Tanisha Mathur ("Dr. Mathur") for chronic pain caused by fibromyalgia, inflammatory arthritis, and other ailments. (PageID.1531-46). Dr. Mathur recognized that Plaintiff was already "seeing a psychiatrist" and wrote that she "has been to physical therapy many times," thus Dr. Mathur recommended she change "to a different muscle relaxer" and try "yoga/Tai Chi programs." (PageID.1538).

In June 2023, Plaintiff went to the ER "complaining of severe low back pain," though she also stated that she was "out of her medication." (PageID.3054).

On July 11, 2023, Plaintiff "underwent laparoscopic left oophorectomy" to treat her

endometriosis and chronic pelvic pain. (PageID.1832-33). She thereafter had an infection in the incision area and received five days of antibiotics. (PageID.3046). On July 27, 2023, Plaintiff went to the emergency department for a "wound check" where she presented with "redness and drainage from the laparoscopic incision to the umbilical area." (PageID.3046). In August 2023, she went to the ER twice for issues related to her wound healing and had a CT scan of her abdomen and pelvis. (PageID. 3037-45, 3023-29). Also in August 2023, Plaintiff again went to the emergency department for "[c]hronic back pain" after "full pain management arsenal used without relief." (PageID.3030).

In September and October, Plaintiff continued to have complications regarding the wound from her oophorectomy. (PageID.1656, 1800, 3000, 3005, 3011). On October 19, 2023, she arrived at the emergency room for "bilateral sciatica pain, also chronic wound to the umbilicus." (PageID.3000). The visit was characterized as a "[c]hronic pain flare up." (PageID.3004). Finally, on November 14, 2023, Dr. Valentine performed an "[u]mbilical scar revision" to address "persistent umbilical drainage, umbilical pain." (PageID.2333). According to the record, Plaintiff no longer required treatment related to her incision after the revision surgery, but she reported later that she "was diagnosed with complex regional pain syndrome in the umbilical area." (PageID.2745).

In December 2023, she continued to attend doctor's visits to address her chronic pain. On December 12, 2023, she saw Dr. Talf Mukhdomi, MD ("Dr. Mukhdomi") on a referral from Dr. Strasburg for "pelvic and perineal pain," "Sacroiliac joint dysfunction," and "fibromyalgia," among other conditions. (PageID.2780). He treated her "pelvic and perineal pain" with a nerve block injection. (*Id.*). Plaintiff went to Dr. Mukhdomi again

on December 18, 2023, and he gave her another nerve block injection to address her lower abdominal pain. (PageID.2798). On December 30, 2023, Plaintiff went to the emergency room for "leg pain" caused by a "[s]evere sciatica flare." (PageID.2991). On January 3, 2024, Plaintiff saw Dr. Josephine Sabharwal, MD, ("Dr. Sabharwal") at the Cleveland Clinic for a "psychiatric diagnostic evaluation." (PageID.2603). Dr. Sabharwal recommended Plaintiff's "participation in the VIO Chronic Pain Neuro-Rehabilitation Program (CPNP)," which he described as "an intensive outpatient program focused upon helping individuals with chronic pain improve functioning, reduce pain and associated psychosocial stress through medical, physical reconditioning and behavioral therapies." (PageID.2608). On January 5, 2024, Plaintiff saw Nurse Practitioner Tessa Ryan ("N.P. Ryan") for psychotherapy and medication management. (PageID.2703-40).

On January 9, 2024, Plaintiff again saw Dr. Mukhdomi for pain management and they discussed various treatment options including nerve blocks and ketamine. (PageID.2801-07). She returned to Dr. Mukhdomi on January 22 and January 31, 2024, for a scapulothoracic bursa injection and a nerve block. (PageID.2810, 2817-18). On February 5, 2024, she saw Dr. Mukhdomi again to consider additional injection options and scheduled a nerve block for February 7, 2024. (PageID.2821, 2827). On March 5, 2024, she saw Dr. Mukhdomi to evaluate her treatment progress and was scheduled for a "repeat L superior hypogastric nerve block and repeat R scapulothoracic bursa injection." (PageID.2831).

In sum, Plaintiff has had a considerable number of doctor's appointments related to her chronic pain and received treatment including nerve blocks and other injections at each,

suggesting that they were necessary appointments. In addition, many of these procedures were regularly repeated, including nerve blocks, Botox, and other injections. Moreover, Plaintiff attended these appointments in almost every instance because of "chronic" pain rather than for a temporary and resolving illness.

During the period in question, Plaintiff had also been receiving regular mental health treatment for anxiety and depression, which the ALJ found to be severe impairments. (PageID.43). On January 24, 2023, Plaintiff went for a new patient assessment with N.P. Ryan at the Emerald Psychiatry & TMS Center. (PageID.1100-52). N.P. Ryan recommended Plaintiff go to counseling weekly and even that Plaintiff "consider [intensive outpatient] while on [short term disability]." (PageID.1152). At the time, Plaintiff was already meeting twice-a-month with Abigail H. Judge, LISW ("Judge") to treat her anxiety and depression (PageID.423-62), but she attended counseling with Judge weekly in February. (PageID.411-20). After February, however, the record only shows Plaintiff seeing Judge sporadically. (PageID.408). Meanwhile, on February 13, March 8, March 22, April 19, June 12, 2023, Plaintiff met with N.P. Ryan for psychotherapy and medication management. (PageID.1223-29, 1153-85, 1186-1222, 1549-1622). On September 2, 2023, Plaintiff had a therapy appointment with Judge in which Judge noted that Plaintiff's "Problems [were] worse" and that Plaintiff "continues to struggle with medical problems and interpersonal relationships." (PageID.1649). On January 5 and February 2, 2024, Plaintiff again met with N.P. Ryan for psychotherapy and medication management. (PageID.2708-09, 2745). Again, this record shows that Plaintiff had a history of medical appointments that could interfere with a regular work schedule. Furthermore, the Plaintiff

demonstrated that these appointments are medically necessary and relate to the reasons for which she seeks disability. As Plaintiff correctly notes, however, the ALJ failed to consider the impact of these appointments on her ability to sustain full-time employment.

The Commissioner relies on *McWhorter v. Berryhill* to argue that the case should not be remanded even though the ALJ did not discuss Plaintiff's absenteeism, but this case is readily distinguishable. As explained by the *Sheldon* court, in *McWhorter*,

> the ALJ explicitly considered and analyzed the claimant's argument that her numerous emergency room visits and inpatient hospital stays were work preclusive. The ALJ rejected the claimant's argument because (1) the claimant's representative did not relate any of the hospital visits to specifically medically determined impairments and functional limitations that would prevent [her] from performing work activity at the sedentary exertional level;" (2) many of the claimant's visits involved isolated incidents like toothaches, car accidents, and a urinary tract infection, not chronic conditions that required ongoing treatment; (3) some of the claimant's visits were triggered by non-compliance with medications; and (4) some of the attending physicians believed that the claimant was visiting the emergency room not to obtain medically necessary treatment but to improperly obtain narcotics.

*Sheldon*, 2019 WL 3933743, at *4 (internal citations omitted).

In the present case, the ALJ did not discuss Plaintiff's absenteeism at all. Thus, particularly given the number of medical appointments Plaintiff attended, as well as the fact that the vast majority of the appointments related to her chronic pain and mental health challenges which form the basis for her disability claim, and the extensive treatment she received at those appointments, the Court cannot properly evaluate whether the ALJ's decision is supported by substantial evidence.

The Commissioner also cites *Beck v. Comm'r of Soc. Sec.,* No. 4:19-CV-2320, 2020

WL 5417536, at *2 (N.D. Ohio Sept. 10, 2020) to support its argument that the ALJ didn't need to refer to absenteeism, but *Beck* is likewise distinguishable from the present case. In *Beck*, the plaintiff asserted "with *no* citation to the record and with *no* support" that she "required medical appointments often enough to result in absences at least twice a month on average." *Id.* The *Beck* court found that explanation "vague[]" and lacking in "medical evidence" to support her claim." *Id.* In this case, however, Plaintiff points to significant record evidence of repeated need for appointments, and extensive treatment received at those appointments, as discussed above.

Next, the Commissioner argues that the cases Plaintiff relies on "do not involve simple medical appointments, but rather hospitalizations and care in other institutional settings." (ECF No. 12, PageID.3106). While the plaintiff in *Sheldon* did have a history of hospitalization, the *Sheldon* court did not suggest that the fact of hospitalization itself, as opposed to doctor's visits, was crucial to the analysis. And in other cases, courts have remanded due to the type and frequency of doctor's appointments regardless of hospitalization. *Clark v. Saul*, No. CV 18-12048, 2019 WL 3268871, at *9 (E.D. Mich. June 28, 2019), *report and recommendation adopted sub nom*. *Clark v. Comm'r of Soc. Sec.,* 2019 WL 3252135 (E.D. Mich. July 19, 2019) ("plaintiff spent a great deal of time attending appointments with various physicians, physical therapists, and others for treatment, evaluation, and testing. ... On remand, the ALJ must make findings regarding the frequency of plaintiff's absenteeism due to these appointments (and any others the Court may have overlooked)."). Thus, the Court finds that the required absenteeism

evaluation should not be limited to hospitalizations and other long-term care.[5]

Next, the Commissioner argues that "Plaintiff fails to explain why most of her appointments would take up an entire day or could not be held outside of working hours." (ECF NO. 12, PageID.3106). Plaintiff responds that "while emergency room visits and urgent care visits may occur outside of traditional office hours, regularly scheduled treatment generally occurs during normal business hours" and cites to *Miller v. Astrue*, No. 1:12-CV-16, 2012 WL 6644390, at *10 (S.D. Ohio Dec. 20, 2012), *report and recommendation adopted*, No. 1:12-CV-16, 2013 WL 360375 (S.D. Ohio Jan. 30, 2013). In *Miller*, where it was "not clear from the record whether those treatments generally can be arranged during non-work hours," the court remanded for such findings. *Id.* The Commissioner cites *Pryor v. Comm'r of Soc. Sec.*, No. 14-13325, 2015 WL 12683977, at *7 (E.D. Mich. Aug. 21, 2015), but in *Pryor*, the only issue was whether Plaintiff could attend physical therapy appointments. In the present case, Plaintiff was seeing multiple different doctors regularly during the relevant period, which suggests that she would not be able to schedule all her appointments around her work schedule. At a minimum, that is an issue for the ALJ to address in the first instance. Furthermore, in *Miller*, as well as in the cases the *Miller* court discusses, the ALJs all considered Plaintiff's absenteeism. Here, even though Plaintiff's attorney specifically raised the issue at the hearing (PageID.93), the ALJ did not address Plaintiff's ability to attend her appointments outside of working hours.

---

[5] Accordingly, the Commissioner's argument that only hospitalizations are relevant and therefore that Plaintiff did not show "that degree of absences over a 12-month period" lacks merit. (ECF No. 12, PageID.3106). Again, as discussed above, Plaintiff demonstrated doctor's appointments between January 2023 and March 2024. (ECF No. 10, PageID.3090).

The Commissioner may not provide an after-the-fact rationalization of the ALJ's decision; rather, the Court must "judge propriety of agency action 'solely by the grounds invoked by the agency.'" *Hunter v. Astrue*, No. 1:09 CV 2790, 2011 WL 6440762, at *4 (N.D. Ohio Dec. 20, 2011). Therefore, on remand, the ALJ should make specific findings to determine whether Plaintiff's absenteeism would preclude her ability to work.

Finally, Plaintiff's absenteeism is an outcome determinative issue, because the vocational expert testified that "an employer may tolerate up to six absences per year." (PageID.91). The Commissioner's contention that the VE also testified that "some absenteeism would be tolerated – one to two absences per month" goes too far. (ECF No. 12, PageID.3107) (citing PageID.91-92). The VE actually testified that "an employer would typically tolerate one to two absences per month during a short probationary period of 30 to 60 days and after that even one absence per month would be met with reprimand up to termination." (PageID.91). Therefore, considering the significant record of doctor's appointments that Plaintiff presents, on remand the ALJ must consider whether the frequency and type of Plaintiff's doctor's appointments are work preclusive.

## III. CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Plaintiff's Motion for Summary Judgment **(ECF No. 10)** is **GRANTED**, and the Commissioner's Motion **(ECF No. 12)** is **DENIED**.

Dated: September 29, 2026
Ann Arbor, Michigan

s/David R. Grand
DAVID R. GRAND
United States Magistrate Judge

# CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 29, 2026.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager